1  Christian Contreras, Esq. (SBN 330269)
       CC@Contreras-Law.com
2  Edwin S. Salguero, Esq. (SBN 344820)
       ES@Contreras-Law.com
3  **LAW OFFICES OF CHRISTIAN CONTRERAS**
   **A PROFESSIONAL LAW CORPORATION**
4  360 E. 2nd St., 8th Floor
   Los Angeles, California 90012
5  Tel: (323) 435-8000; Fax: (323) 597-0101

6  Attorneys for Plaintiffs,
   ESTATE OF ALEXIS PULIDO
7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  ESTATE OF ALEXIS PULIDO, by and        ) **CASE NO.: 2:24-cv-1413**
    through his successors in interest,    )
12  SANDRA AVELAR, individually,           ) **COMPLAINT FOR DAMAGES**
                                           )
13                                         ) 1.  Excessive Force in Violation of the
                                           )     Fourth Amendment
14                Plaintiffs,              )     (42 USC § 1983);
                                           ) 2.  Interference with Familial
15         v.                              )     Relationship in Violation of
                                           )     Fourteenth Amendment
16                                         )     (42 USC § 1983);
    INGLEWOOD POLICE                       ) 3.  Failure to Intervene
17  DEPARTMENT, a public entity; CITY      )     (42 USC § 1983);
    OF INGLEWOOD, a public entity;         ) 4.  Municipal Liability – Unconstitutional
18  ROBERT SWENSON, individually;          )     Policy, Custom, Practice
    JAVIER MOSLEY, individually,           )     (42 USC § 1983);
19                                         ) 5.  Municipal Liability – Failure to Train
                                           )     (42 USC § 1983)
20                Defendants.              )
                                           )
21                                         )
                                           ) **DEMAND FOR JURY TRIAL**
22  _____ )

23

24

25

26

27

28

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

## **INTRODUCTION**

1.       This is a civil rights action seeking monetary damages against Defendants INGLEWOOD POLICE DEPARTMENT, CITY OF INGLEWOOD, ROBERT SWENSON, and JAVIER MOSLEY stemming from a deadly use of force shooting wherein Defendants shot and killed ALEXIS PULIDO on September 16, 2022 in the City of Inglewood.

2.       On September 16, 2022, when Defendants ROBERT SWENSON and JAVIER MOSLEY, attempted to contact ALEXIS PULIDO, there was no ongoing emergency, no one in danger, and no exigency involved in contacting ALEXIS PULIDO. Indeed, when Defendants ROBERT SWENSON and JAVIER MOSLEY contacted ALEXIS PULIDO, officers were responding to a call regarding a man being in front of someone's yard. Further, ALEXIS PULIDO was outside, standing, in the front of the yard while the person who called 911 was inside, demonstrating that there was no exigency in contacting ALEXIS PULIDO in relation to the 911 call.

3.       After Defendants ROBERT SWENSON and JAVIER MOSLEY, attempted to contact ALEXIS PULIDO, ALEXIS PULIDO began walking away. As ALEXIS PULIDO began walking away from Defendants ROBERT SWENSON and JAVIER MOSLEY, Defendants ROBERT SWENSON and JAVIER MOSELY immediately and forcibly grabbed, ALEXIS PULIDO. After grabbing ALEXIS PULIDO, Defendant ROBERT SWESON used deadly force on ALEXIS PULIDO and killed him. In using such deadly force, Defendants violated ALEXIS PULIDO's Fourth Amendment rights because when they used deadly force on ALEXIS PULIDO, ALEXIS PULIDO was unarmed, walking away from the officers, and most importantly, not a threat whatsoever to anyone including the officers. ALEXIS PULIDO was not a threat of death or serious bodily injury in any form.

4.       Prior to being shot to death by Defendant ROBERT SWENSON, ALEXIS PULIDO did not make a furtive movement or a harrowing gesture and did not do anything threatening whatsoever to Defendants ROBERT SWENSON and JAVIER

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

1   MOSLEY, inclusive, such that Defendants would have reasonably perceived  ALEXIS
2   PULIDO as a threat. ALEXIS PULIDO was simply attempting to walk away.

3       5.    In using such unreasonable and excessive force, Defendant ROBERT
4   SWENSON, violated ALEXIS PULIDO's constitutional rights including his Fourth
5   Amendment rights under the United States Constitution. By shooting and killing
6   ALEXIS PULIDO, Defendant ROBERT SWENSON, also violated Plaintiff SANDRA
7   AVELAR's Fourteenth Amendment rights given that she is now deprived of a
8   relationship with her son. Further, the use of deadly force by Defendant ROBERT
9   SWENSON, was due to Defendants INGLEWOOD POLICE DEPARTMENT and
10  CITY OF INGLEWOOD's unconstitutional customs and practices as well as failure to
11  train their employees.

12      6.    Accordingly, this Complaint seeks judicial redress and monetary damages
13  for such constitutional violations.

14                                 **JURISDICTION AND VENUE**

15      7.    This case is properly heard in United States District Court under federal
16  question jurisdiction, pursuant 28 U.S.C. § 1331, as it is a civil suit which presents
17  questions arising exclusively under federal law.

18      8.    Venue is proper within the Central District of California pursuant to 28
19  U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the
20  events and omissions giving rise to Plaintiffs' claims occurred within this district.

21                                        **PARTIES**

22      9.    Plaintiff SANDRA AVELAR, is and was, at all times relevant hereto, the
23  natural parent of decedent ALEXIS PULIDO, and at all times relevant hereto was a
24  resident of the City of Inglewood, California. Plaintiff SANDRA AVELAR brings her
25  claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et*
26  *seq.*, which provide for survival and wrongful death actions. Plaintiff SANDRA
27  AVELAR also brings her claims individually and on behalf of decedent ALEXIS
28  PULIDO on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution,

1   and Federal civil rights law. Plaintiff SANDRA AVELAR also bring these claims as a

2   Private Attorney General, to vindicate not only her rights, but others' civil rights of

3   great importance.

4         10.    Defendant INGLEWOOD POLICE DEPARTMENT is a public entity

5   with the capacity to sue and be sued.[1] At all times relevant to the facts alleged herein,

6   Defendant INGLEWOOD POLICE DEPARTMENT was responsible for law

7   enforcement services in the City of Inglewood.

8         11.    Defendant CITY OF INGLEWOOD is a public entity with the capacity to

9   sue and be sued. At all times relevant to the facts alleged herein, Defendant CITY OF

10   INGLEWOOD was responsible for assuring that the actions, omissions, policies,

11   procedures, practices and customs of its employees complied with the laws and the

12   Constitutions of the United States and of the State of California.

13         12.    Defendant ROBERT SWENSON is sued in his individual capacity and

14   was, at all relevant times, an individual employed as a police officer of the Defendant

15   INGLEWOOD POLICE DEPARTMENT, acting under color of law and within the

16   course and scope of such employment.

17         13.    Defendant JAVIER MOSLEY is sued in his individual capacity and was,

18   at all relevant times, an individual employed as a police officer of the Defendant

19   INGLEWOOD POLICE DEPARTMENT, acting under color of law and within the

20   course and scope of such employment

21         14.    Each of the defendants caused, and is responsible for, the unlawful

22   conduct and resulting injuries suffered by Plaintiff by, among other things, personally

23   participating in the unlawful conduct, acting jointly, or conspiring with others who did

24   so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or

---

[1] The Ninth Circuit has held that California law permits § 1983 claims against municipal police departments. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.).

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

1   actions that led to the unlawful conduct, by failing to take action to prevent the unlawful

2   conduct; by failing and refusing to initiate and maintain adequate training and

3   supervision; by failing to enact policies to address the constitutional rights of protesters

4   despite the obvious need for such a policy; and by ratifying the unlawful conduct that

5   occurred by agents and officers under their direction and control, including failing to

6   take remedial or disciplinary action.

7       15.   Plaintiff is informed and believes and thereon alleges that each of the

8   Defendants was at all material times an agent, servant, employee, partner, joint venturer,

9   co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things

10  herein alleged, was acting within the course and scope of that relationship. Plaintiff is

11  further informed and believes and thereon alleges that each of the Defendants herein

12  gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or

13  authorized the acts or omissions of each Defendant as alleged herein, except as may be

14  hereinafter specifically alleged. At all material times, each Defendant was jointly

15  engaged in tortious activity and an integral participant in the conduct described herein,

16  resulting in the deprivation of Plaintiff's and decedent's constitutional rights and other

17  harm.

18      16.   Plaintiff is informed, believes, and thereupon alleges that, at all times

19  relevant hereto, Defendants, and each of them, acted as the agents, servants, and

20  employees of each of the other defendants.

21      17.   In doing each of the acts and/or omissions alleged herein, Defendants, and

22  each of them, acted within the course and scope of their employment.

23      18.   In doing each of the acts and/or omissions alleged herein, Defendants, and

24  each of them, acted under color of authority and/or under the color of law.

**FACTUAL ALLEGATIONS**

26      19.   On the night of September 16, 2022, ALEXIS PULIDO, at only twenty-

27  two (22) years old, was repeatedly shot and killed by Defendant ROBERT SWENSON

28  at a front yard located at 1142 S. Eucalyptus Ave., Inglewood, CA 90301.

20.    ALEXIS PULIDO was standing at the front of the yard on S. Eucalyptus when he was approached by Defendants ROBERT SWENSON and JAVIER MOSLEY. After Defendants ROBERT SWENSON and JAVIER MOSLEY attempted to contact ALEXIS PULIDO, ALEXIS PULIDO began walking away from the officers.

21.    Despite no report of a violent crime, no ongoing violent crime, and no ongoing threat to the safety of the officers, Defendants ROBERT SWENSON and JAVIER MOSLEY, ambushed ALEXIS PULIDO.

22.    As ALEXIS PULIDO attempts to walk away from the Defendants, the immediate reaction of the Defendants is to forcibly grab ALEXIS PULIDO (Decedent ALEXIS PULIDO is below the red arrow). Defendant ROBERT SWENSON then decided to discharge his firearm at ALEXIS PULIDO multiple times and the bullets from his firearm struck ALEXIS PULIDO.



23.    Further, while Defendants ROBERT SWENSON and JAVIER MOSLEY were forcibly holding ALEXIS PULIDO, and while ROBERT SWENSON repeatedly shot ALEXIS PULIDO, Defendant JAVIER MOSLEY did nothing to intervene and prevent the deadly force which ROBERT SWENSON used on ALEXIS PULIDO. JAVIER MOSLEY did not attempt to de-escalate the situation and simply allowed

1   ROBERT SWENSON to shoot ALEXIS PULIDO over six (6) times in the back, which

2   resulted in the death of ALEXIS PULIDO.

3       24.    Defendant ROBERT SWENSON clearly discharged his firearm at

4   ALEXIS PULIDO multiple times and the bullets fired by Defendant ROBERT

5   SWENSON indeed struck ALEXIS PULIDO with gunfire. Defendant ROBERT

6   SWENSON fired his firearm intentionally at ALEXIS PULIDO and struck ALEXIS

7   PULIDO with gunfire causing ALEXIS PULIDO's death. In fact, Defendant ROBERT

8   SWENSON's repeated shooting of ALEXIS PULIDO is seen and heard on video and

9   undisputed by video evidence.

10       25.    Of the various shots fired by Defendant ROBERT SWENSON, there were

11   six entrance wounds on ALEXIS PULIDO's body. The six entrance wounds caused

12   significant damage to ALEXIS PULIDO's body, including but not limited to: injury to

13   the left shoulder area, sternum, ribs, heart, trachea, esophagus, thoracic spine, stomach,

14   and liver. These entrance wounds caused serious injury including, but not limited to

15   fractures and defects to ALEXIS PULIDO's internal system. Further, of the six

16   entrance wounds, three (3) bullets penetrated and were recovered from ALEXIS

17   PULIDO's body: one bullet in the upper flank, and two in the interior chest wall.

18       26.    The autopsy report confirms that the bullets discharged by Defendant

19   ROBERT SWENSON, struck ALEXIS PULIDO. Further, the autopsy report confirms

20   that the shots fired were towards ALEXIS PULIDO's back demonstrating that ALEXIS

21   PULIDO was facing away from the officers when he was repeatedly shot. ALEXIS

22   PULIDO died as a result of the gunshot fired by Defendant.

23       27.    To be clear, Defendant ROBERT SWENSON, used deadly force on

24   ALEXIS PULIDO. The use of deadly force by Defendant ROBERT SWENSON

25   constituted physical contact that ALEXIS PULIDO did not consent to. Consequently,

26   the use of deadly force by Defendant ROBERT SWENSON caused ALEXIS PULIDO

27   to be struck by a barrage of gunfire, all of which was discharged from the firearm

28   deployed by Defendant ROBERT SWENSON and ultimately caused ALEXIS

1  PULIDO's death.

2  28.  Furthermore, Defendant ROBERT SWENSON, firing his firearm, never

3  provided a *Garner* warning nor a warning that he was going shoot at any point in their

4  contact with ALEXIS PULIDO and certainly not before he shot and killed ALEXIS

5  PULIDO.

6  29.  Plainly, Defendant ROBERT SWENSON executed ALEXIS PULIDO

7  without legal justification. The deadly force used by Defendant ROBERT SWENSON

8  was unreasonable and excessive. In fact, the deadly force used by Defendant was not

9  necessary in any form to defend against any threat, particularly any threat from

10  ALEXIS PULIDO because ALEXIS PULIDO was never armed with any weapon

11  whatsoever. The deadly use of force by Defendant ROBERT SWENSON was clearly

12  unreasonable and excessive.

### FIRST CLAIM FOR RELIEF

**For Excessive Force In Violation of The Fourth Amendment**

**(42 USC § 1983)**

**(By Plaintiff ESTATE OF ALEXIS PULIDO against Defendant ROBERT SWENSON)**

18  30.  Plaintiff realleges and incorporates by reference each of the forgoing

19  paragraphs of this Complaint with the same force and effect as if fully set forth herein.

20  31.  The Fourth Amendment to the Constitution provides in part, "[t]he right

21  of the people to be secure in their persons . . . against unreasonable searches and

22  seizures, shall not be violated . . ." U.S. Const. amend. IV. Under the Fourth

23  Amendment, a police officer may use only such force as is "objectively reasonable"

24  under all of the circumstances. *See Graham v. Connor,* 490 U.S. 386, 397 (1989).

25  32.  At all relevant times, Defendants ROBERT SWENSON was acting under

26  color of law.

27  33.  On September 16, 2022, Defendant ROBERT SWENSON used deadly

28  force on ALEXIS PULIDO. When Defendant ROBERT SWENSON used deadly force

8

1    on ALEXIS PULIDO, Defendant violated ALEXIS PULIDO's Fourth Amendment

2    rights because when he used deadly force on ALEXIS PULIDO, ALEXIS PULIDO

3    was unarmed, walking away from the officers, and most importantly, not a threat

4    whatsoever to anyone including the officers. Indeed, given that ALEXIS PULIDO was

5    walking away before being shot to death, ALEXIS PULIDO was not a threat of death

6    or serious bodily injury in any form.

7          34.    Prior to being shot to death by Defendant ROBERT SWENSON, ALEXIS

8    PULIDO did not make a furtive movement or a harrowing gesture and did not do

9    anything threatening whatsoever to Defendant ROBERT SWENSON and the other

10    officer such that Defendant would have reasonably perceived ALEXIS PULIDO as a

11    threat. ALEXIS PULIDO was simply walking away.

12          35.    Furthermore, the inception of Defendant ROBERT SWENSON's contact

13    with ALEXIS PULIDO was de minimis given that there was no ongoing emergency,

14    no one in danger, and no exigency involved in contacting ALEXIS PULIDO. Indeed,

15    when Defendant ROBERT SWENSON and JAVIER MOSLEY contacted ALEXIS

16    PULIDO, the contact was related to ALEXIS PULIDO being in front of someone's

17    front yard. Therefore, the governmental interest in the contact between Defendant

18    ROBERT SWENSON was minor.

19          36.    Accordingly, under the totality of the circumstances, Defendant ROBERT

20    SWESNON's use of deadly force on ALEXIS PULIDO was not objectively reasonable

21    and was in violation of ALEXIS PULIDO's Fourth Amendment rights.

22          37.    As a direct and proximate result of Defendants' acts and/or omissions as

23    set forth above, ALEXIS PULIDO sustained injuries and damages.

24          38.    As a direct and proximate result of Defendants' conduct, the civil rights

25    of ALEXIS PULIDO, as protected by the Fourth Amendment of the United States

26    Constitution were violated and he lost their lives as a result. Further, ALEXIS PULIDO

27    experienced physical pain, severe emotional distress, and mental anguish, as well as

28    loss of his life and other damages alleged herein.  Accordingly, Plaintiff is entitled to

1   pre-death pain and suffering damages as well as loss of life damages.

2   39.   Defendant subjected Decedent to his wrongful conduct, depriving

3   Decedent of rights described herein, knowingly, maliciously, and with conscious and

4   reckless disregard for whether the rights and safety of Decedent and others would be

5   violated by their acts and/or omissions. The conduct of Defendants entitles Plaintiff to

6   punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by

7   law. Plaintiff does not seek punitive damages against the public entity Defendants.

8   40.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

9   U.S.C. § 1988, and other applicable United States and California codes and laws.

### SECOND CLAIM FOR RELIEF

**For Interference with Familial Relationship**

**in Violation of the Fourteenth Amendment**

**(42 U.S.C. § 1983)**

**(By Plaintiff SANDRA AVELAR, individually, against Defendant ROBERT SWENSON)**

16   41.   Plaintiff realleges and incorporates by reference each of the forgoing

17   paragraphs of this Complaint with the same force and effect as if fully set forth herein.

18   42.   Parents and children possess a constitutionally protected liberty interest in

19   companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411,

20   1418 (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199

21   F.3d 1037 (9th Cir. 1999) (en banc).  This liberty interest is rooted in the Fourteenth

22   Amendment, which states in relevant part that "[n]o State shall . . . deprive any person

23   of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

24   43.   At all relevant times, all of the acts of Defendant ROBERT SWENSON,

25   were done under color of state law.

26   44.   The acts and omissions of Defendant ROBERT SWENSON, was conduct

27   which shocks the conscience done with a purpose to harm or in deliberate indifference

28   to ALEXIS PULIDO's life, protection, and constitutional rights.

45. The acts and/or omissions of Defendant ROBERT SWENSON, including his unconstitutional use of deadly force, violated Plaintiff's liberty interests in the familial relationship and violated Plaintiff's substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

46. The acts and omissions of the Defendant, ROBERT SWENSON, deprived Plaintiff SANDRA AVELAR of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of her rights to a familial relationship with ALEXIS PULIDO without due process of law by their deliberate indifference in causing the death of ALEXIS PULIDO through Defendant's acts and omissions.

47. In engaging in conduct with shocks the conscience, Defendant ROBERT SWENSON, acted with a purpose to harm unrelated to any legitimate law enforcement objective when he shot and killed ALEXIS PULIDO. At the very least, Defendant ROBERT SWENSON acted with deliberate indifference to the rights, safety, and wellbeing of ALEXIS PULIDO when they shot and killed ALEXIS PULIDO.

48. Accordingly, the conduct of Defendant ROBERT SWENSON shocks the conscience and has destroyed his familial association with Plaintiff and ALEXIS PULIDO in violation of the Fourteenth Amendment.

49. As a direct and proximate result of Defendant's acts and/or omissions as set forth above, Plaintiff sustained injuries and damages and is entitled to damages under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

50. Furthermore, Defendant subjected Decedent to his wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against the public

entity Defendants.

51.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States laws.

### THIRD CLAIM FOR RELIEF

**Failure to Intervene**

**(42 U.S.C. § 1983)**

**(By Plaintiff ESTATE OF ALEXIS PULIDO against Defendant JAVIER MOSLEY)**

52.     Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

53.     Plaintiff SANDRA AVELAR claims that Defendant JAVIER MOSLEY, is equally liable for the constitutional rights violations they suffered at the hands of Defendant ROBERT SWENSON due to the complete and utter failure of Defendant JAVIER MOSLEY to intervene therein.

54.     Defendant JAVIER MOSLEY had a duty to intervene in the excessive force perpetrated by Defendant ROBERT SWENSON against ALEXIS PULIDO to the extent that it became quickly recognizable that Defendant ROBERT SWENSON was using excessive force on Plaintiff. Defendant JAVIER MOSLEY, is equally liable for failing to intervene in the unlawful force against Plaintiff.

55.     Plaintiff is informed, believes, and on that basis alleges, that Defendant JAVIER MOSLEY was physically present for and aware of the rights violations perpetrated by Defendant ROBERT SWENSON as they were occurring, but declined to intervene in violation of their sworn duties as peace deputies.

56.     The vicious shooting of ALEXIS PULIDO suffered at the hands of Defendant ROBERT SWENSON exclusively, caused ALEXIS PULIDO's serious injuries and his death.

57.     As a direct consequence of these injuries, Plaintiff suffered and continues to suffer severe physical, mental, and emotional anguish.

58.     Furthermore, the conduct of Defendant JAVIER MOSLEY was undeniably malicious, oppressive, and/or recklessly disregardful of ALEXIS PULIDO's rights and safety. In allowing a vicious attack of a man who was simply standing in the front of someone's yard, the conduct of Defendant JAVIER MOSLEY reflects: 1) spiteful, ill-willed, and/or harmful purpose; 2) unnecessary harshness and severity amounting to an abuse of authority over another's weakness, disability, or misfortune; and 3) complete indifference to Plaintiff's and others' rights and safety in the face of manifest risks thereto. Accordingly, Plaintiff is entitled to recover punitive damages against Defendant JAVIER MOSLEY, in addition to compensation for the severe physical, mental, emotional, and economic injuries he has caused, in order to deter such despicable conduct by the example of his punishment.

## FOURTH CLAIM FOR RELIEF

### For Municipal Liability – Unconstitutional
### Policy, Custom, Or Practice
### (42 U.S.C. § 1983)

**(By Plaintiff ESTATE OF ALEXIS PULIDO against Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD)**

59.     Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

60.     In *Monell*, the Supreme Court held that municipalities may be held liable under § 1983 only for constitutional violations resulting from official county custom or policy. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978).

61.     As set forth in the foregoing claims for relief, Defendants ROBERT SWENSON and JAVIER MOSLEY, inclusive, committed clear and well-established violations of ALEXIS PULIDO's constitutional rights, under color of law, and while acting within the course and scope of their employment as police officers with Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD. ///

62.     The complete and utter failure of the Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD to redress systemic unconstitutional customs and practices and implement procedural safeguards, in all of the ways described in the paragraph to follow, is tantamount to an unconstitutional policy of inaction on account of the facts that: 1) certain unlawful customs or practices have been permitted to grow so widespread commonplace in their usage as to constitute standard operating procedures within the INGLEWOOD POLICE DEPARTMENT; and 2) the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights set forth herein that the policymakers of the Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, can be reasonably regarded as deliberately indifferent to this need.

63.     On and for some time prior to September 16, 2022, (and continuing to the present date), Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, acting with reckless and deliberate indifference to the rights and liberties of the public in general, and of ALEXIS PULIDO and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

A. Permitting officers such as Defendant ROBERT SWENSON to shoot members of the public such as ALEXIS PULIDO in the back;

B. Permitting officers such as Defendant ROBERT SWENSON, to shoot members of the public such as ALEXIS PULIDO despite being unarmed;

C. Permitting officers such as Defendant JAVIER MOSLEY to not intervene despite physically seeing another officer engage in using excessive force.

D. Permitting officers to use deadly force even after officers have already used deadly force and a perceived threat has been neutralized;

E. Failing to correct repeated excesses of force, and to adequately train, instill, and retrain personnel on the appropriate standards thereof, de-escalation techniques, familiarity with "less-than-lethal" alternatives to deadly force,

14

and confidence in their reliance thereon.

F.  Employing and retaining personnel, including the individual defendants, who are known or reasonably could have been discovered to have high propensities for abusing their authority, omitting crucial duties, mistreating civilians, resorting to excessive force, and failing to follow established agency policies respecting interactions with civilians and their civil rights;

G.  Maintaining vastly inadequate procedures and follow through, if any, for the reporting, investigating, supervising, disciplining, and correcting of intentional misconduct and/or gross negligence by personnel, including the individual defendants;

H.  Consistently ratifying the intentional misconduct and/or gross negligence of personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

I.  Encouraging, accommodating, or facilitating a "code of silence" among personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

J.  Actively facilitating the transfer of problem personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct, thereby allowing them to evade discipline and, likewise, shielding the departments from accountability;

K.  Allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into

positions of supervision or authority within the department; and

L. The many other abuses of power and/or breaches of duty not specifically identified herein.

64. The structural and administrative features set forth above-regardless of whether expressly adopted, informally entrenched as *de facto* customs or practices due to their widespread and longstanding character, or having materialized in the absence of foreseeably necessary safeguards-all constitute standard operating procedures within Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD.

65. Clearly, Defendants ROBERT SWENSON and JAVIER MOSLEY acted pursuant to the foregoing customs and practices, and were the moving force behind ALEXIS PULIDO's constitutional violation.

66. As a direct consequence of these realities, the public has endured pervasive misuses of force and/or police killings, lost considerable trust and grown increasingly fearful of local law enforcement, and sustained the exorbitant costs of individualized trauma, family and community destruction, and the perpetual hemorrhaging of public resources in remediation rather than prevention of these problems. In the aggregate, these consequences undermine public safety, well-being, liberty, and equity so severely that all CITY OF INGLEWOOD residents are worse off.

67. The perpetual torrent of civilian complaints, litigation, and scrutiny by local, state, and national media, academia, and government officials, has rendered the dire state of affairs within the INGLEWOOD POLICE DEPARTMENT unignorable and undeniable. At some point well before the brutalization of ALEXIS PULIDO, Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, and each of the individual supervisory officials thereof, whether named or unnamed, achieved actual or constructive knowledge of the forgoing policies, customs, and practices. Nevertheless, Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, by and through its final policymakers, has persisted in

tolerating, condoning, or ratifying the above-referenced policies, customs, and practices with deliberate indifference to their unconstitutionality and foreseeable consequences, not least of which resemble those suffered by ALEXIS PULIDO and other individuals similarly situated.

68.     But for the sustained deliberate indifference of the Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, and the final policymakers thereof, to the absence or utter inadequacy of procedural safeguards so obviously necessary to the prevention of these readily foreseeable harms, the shooting and brutalization of ALEXIS PULIDO would, to a reasonable certainty, not have occurred. Therefore, the above-referenced policies, customs, and practices adopted, maintained, or still tolerated by Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, and the final policymakers thereof, are so inextricably connected to the unconstitutional acts and omissions of the individual Defendants as to have been the moving force behind them.

69.     Accordingly, Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, should not be held any less liable for the harms alleged in all other Claims for Relief, that it caused ALEXIS PULIDO through its employees, who at all times acted or failed to act pursuant to the INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD's own policy of inaction, as previously set forth.

## FIFTH CLAIM FOR RELIEF

### For Municipal Liability – Failure To Train

### (42 U.S.C. § 1983)

### (By Plaintiff ESTATE OF ALEXIS PULIDO against Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD)

70.     Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

///

71.   "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

72.   Plaintiff claims that the shooting and killing of ALEXIS PULIDO was a result of the Defendants, INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD's, failure to train their employees, including Defendants ROBERT SWENSON and JAVIER MOSLEY.

73.   At all relevant times, Defendants ROBERT SWENSON and JAVIER MOSLEY were acting in the course of their employment with the Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD under color of law. The actions and omissions of Defendants ROBERT SWENSON and JAVIER MOSLEY, inclusive deprived ALEXIS PULIDO of particular rights guaranteed under the laws and Constitutions of the United States and California, as set forth in the relevant, earlier claims for relief.

74.   Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD's training of Defendants ROBERT SWENSON and JAVIER MOSLEY, inclusive, did not adequately instill the necessary discipline, restraint, and respect for civil rights required of enforcement personnel, especially in light of the Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD's decision to continue to employ Defendants ROBERT SWENSON and JAVIER MOSLEY, inclusive, despite their incompetence.

75.   Indeed, on and for some time prior to September 16, 2022, (and continuing to the present date), Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of ALEXIS PULIDO, and of persons in his class, situation and comparable position in particular,

failed to train their employees in the following regard:

    A. Failing to train employees by permitting officers such as Defendant ROBERT SWENSON, to shoot members of the public such as ALEXIS PULIDO in the back;

    B. Failing to train employees by permitting officers such as Defendant ROBERT SWENSON to shoot members of the public such as ALEXIS PULIDO despite being unarmed;

    C. Failing to train employees by permitting officers such as Defendant JAVIER MOSLEY to not intervene despite physically seeing another officer engage in using excessive force.

    D. Failing to train employees by permitting officers to use deadly force even after officers have already used deadly forced and a perceived threat has been neutralized;

    E. Failing to train employees by failing to correct repeated instances of excessive force, and to adequately train, instill, and retrain personnel on the appropriate standards therefor, de-escalation techniques, familiarity with "less-than-lethal" alternatives to deadly force and confidence in their reliance thereon.

    F. Failing to train employees by employing and retaining personnel, including the individual defendants, who are known or reasonably could have been discovered to have high propensities for abusing their authority, omitting crucial duties, mistreating civilians, resorting to excessive force, and failing to follow established agency policies respecting interactions with civilians and their civil rights;

    G. Failing to train employees by maintaining vastly inadequate procedures and follow through, if any, for the reporting, investigating, supervising, disciplining, and correcting of intentional misconduct and/or gross negligence by personnel, including the individual defendants;

H. Failing to train employees by consistently ratifying the intentional misconduct and/or gross negligence of personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

I. Failing to train employees by encouraging, accommodating, or facilitating a "code of silence" among personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

J. Failing to train employees by actively facilitating the transfer of problem personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct, thereby allowing them to evade discipline and, likewise, shielding the departments from accountability;

K. Failing to train employees by allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of supervision or authority within the department; and

L. Failing to train employees as demonstrated many other abuses of power and/or breaches of duty not specifically identified herein.

76. This failure of Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD to provide adequate training caused the variously alleged deprivations of ALEXIS PULIDO's rights by the individual defendants; that is, the INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD's failure to train is so closely related to the deprivation of ALEXIS PULIDO's rights as to be the moving force that caused his ultimate injuries.

77.   Clearly, Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

78.   Accordingly, the Defendants INGLEWOOD POLICE DEPARTMENT and CITY OF INGLEWOOD are liable for the rights violations perpetrated by its employees, agents, representatives, or officers, including Defendants ROBERT SWENSON and JAVIER MOSLEY, inclusive, on account of the unacceptable failures in their training that precipitated the various harms set forth in all other claims for relief herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests entry of judgment in her favor and against Defendants as follows:

A.   Wrongful death damages for the wrongful death of ALEXIS PULIDO, pursuant to Cal. Code of Civ. Proc. § 377.*60 et. seq*. and the second claim for relief, interference with familial relationship;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq*. and the second claim for relief, interference with familial relationship;

C.   ALEXIS PULIDO's coroner's fees, funeral and burial expenses;

D.   Violation of ALEXIS PULIDO's constitutional rights, pursuant to federal civil rights law;

E.   ALEXIS PULIDO's loss of life damages pursuant to federal civil rights law;

F.   ALEXIS PULIDO's conscious pain, suffering, and disfigurement damages pursuant to federal civil rights law;

G.   General Damages;

H.   Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

1     I.    Punitive damages as to individual Defendants'

2     J.    Interest; and

3     K.    All other damages, penalties, costs, interest, and attorneys' fees as allowed

4          by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§

5          377.20 *et. seq.*, 377.60 *et. seq.*.; and as otherwise may be allowed by

6          California and/or federal law.

**Dated: February 21, 2024**      **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                         **A PROFESSIONAL LAW CORPORATION**

By: _____
            CHRISTIAN CONTRERAS, ESQ.
            Attorneys for Plaintiff,
            ESTATE OF ALEXIS PULIDO

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims for relief alleged herein.

**Dated: February 21, 2024**      **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                         **A PROFESSIONAL LAW CORPORATION**

By: _____
            CHRISTIAN CONTRERAS, ESQ.
            Attorneys for Plaintiff,
            ESTATE OF ALEXIS PULIDO

**PLAINTIFFS' COMPLAINT FOR DAMAGES**